**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 15-20150-CIV-LENARD/GOODMAN

**ROY R. LUSTIG,**

Plaintiff,

**v.**

**BARBARA STONE,**

Defendant.
_____/

## ORDER ENJOINING DEFENDANT BARBARA STONE FROM MAKING ANY FURTHER FILINGS WITHOUT FIRST OBTAINING JUDICIAL PERMISSION

**THIS CAUSE** is before the Court on a <u>sua sponte</u> review of the record.  For the reasons that follow, the Court finds that Defendant Barbara Stone is a vexatious litigant and enjoins her from making any further filings without first obtaining judicial permission.

## I.    Background

According to the Amended Complaint, "[Plaintiff Roy R.] Lustig and [Defendant Barbara] Stone first crossed paths in connection with a guardianship proceeding initiated by Stone in" Florida probate court, Judge Michael Genden presiding.  (D.E. 5 ¶ 5.)  Lustig represented Jacqueline Hertz and Blaire Lapides, the successor guardians for Stone's mother, Helen Stone, a person who was adjudged to be incompetent.  (See id.; see also D.E. 5-11 at 2.)

As a result of the guardianship proceedings, Stone engaged in a course of conduct that Magistrate Judge Jonathan Goodman described as evidencing "a single-minded intent

to destroy Lustig both professionally and personally." (Report and Recommendations on Plaintiff's Damages, D.E. 58 at 17.) For example, Stone published defamatory statements about Lustig in emails and on the internet, "branding him as a criminal actor, racketeer, thief, and murderer, among many other things." (Id. at 14-15.) Stone "also aimed to destroy Lustig's personal life by involving his wife and daughter in her vendetta against Lustig." (Id. at 15.)

In January 2015, Lustig (or "Plaintiff") sued Stone (or "Defendant") in this Court for defamation, intentional infliction of emotional distress, interference with advantageous business relationship, and injunctive relief. (See Am. Compl., D.E. 5.) The Court's jurisdiction was based on diversity of citizenship, as the Amended Complaint alleged that Lustig was a resident of Florida and that Stone was a resident of New York. (Id. ¶¶ 1-3.) Stone, proceeding pro se, moved to dismiss for lack of subject matter jurisdiction, arguing that the Parties were not diverse. (D.E. 12.)

On March 23, 2015, the Court issued an Order directing the Parties to jointly file, among other things, a completed form indicating whether they agreed to have a magistrate judge decide certain issues and a Joint Scheduling Report and Form within thirty days of the Order. ("Beginning Order," D.E. 16.) The Parties failed to timely comply with the Beginning Order, and on April 23, 2015, the Court issued an Order to Show Cause directing the Parties to file the necessary papers on or before April 27, 2015. (D.E. 20.) The Court stated that "failure to comply with this Order or submit notice of good cause for failure to comply shall result in dismissal of this action." (Id.) Lustig responded by informing the Court that he attempted to comply with the Beginning Order, but Stone was uncooperative

and unresponsive.  (See D.E. 21.)   Therefore, Lustig was required to file the papers unilaterally.  (See id.)

Stone failed to respond to the Court's April 23, 2015 Show Cause Order; instead, on April 24, 2015, she filed a "Re-Stated" Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (D.E. 22.)

On April 28, 2015, the Court issued an Order providing Stone until and including May 6, 2015 to show cause why she did not comply with the Court's Beginning Order or the Court's April 23, 2015 Show Cause Order.  (D.E. 24.)  The Court warned Stone that "[f]ailure to show good cause for failing to comply with the Court's Orders may result in sanctions, including the entry of default against Defendant pursuant to Federal Rule of Civil Procedure 55."  (Id.)

Stone failed to respond to the Court's April 28, 2015 Show Cause Order, but made several other filings.  First, on April 30, 2015, she filed a "Counterclaim and Declaratory Judgment Claim" against Lustig, Jacqueline Hertz, Blaire Lapides, Judge Genden, and many others.  (D.E. 25.)

Next, on May 4, 2015, Stone directed the clerk to file under seal an "Emergency Application" for an ex parte temporary restraining order and preliminary injunction against Judge Genden.  (D.E. 27.)  Therein, Stone asked the Court to enjoin Judge Genden from holding a contempt hearing in state court.  (See id.)  The same day, Stone directed the clerk to file under seal an "Urgent" letter requesting a hearing on her "emergency" application for a temporary restraining order.  (D.E. 28.)  For both motions, she failed to comply with Local Rule 7.1(e) (now Local Rule 7.1(d)), which requires an emergency motion to be

accompanied by a Certification of Emergency,[1] and she failed to comply with Local Rule

5.4(b), which establishes procedures for filing motions under seal.  The Court denied both

motions.  (D.E. 29.)

Then, on May 5, 2015, Stone filed an "Amended Complaint and Emergency

Application for Temporary Restraining Order & Expedited Hearing on Preliminary

Injunction" naming Judge Genden as the only Defendant.  (D.E. 32.)  Once again, Stone

failed to certify the emergency in violation of Local Rule 7.1(e).  The Court denied the

Emergency Application and struck the Amended Complaint from the record, stating: "This

case is one by Plaintiff Roy Lustig against Stone for defamation per se, intentional

infliction of emotional distress, interference with advantageous business relationship, and

injunctive relief.  (See D.E. 5.)  Stone's 'Amended Complaint' names only Judge Genden

as a Defendant and is completely irrelevant to this Action."  (D.E. 34.)

---

[1]       On December 1, 2015, former Local Rule 7.1(e) was recodified as Local Rule
7.1(d).  It provides:

> A filer requesting emergency action must include the words "Emergency Motion"
> in the title of the motion and must set forth in detail the nature of the emergency,
> the date by which a ruling is necessary, and the reason the ruling is needed by the
> stated date. The unwarranted designation of a motion as an emergency motion may
> result in sanctions. The filer must certify that the matter is a true emergency by
> including the following certification before the motion's signature block:

> After reviewing the facts and researching applicable legal principles, I certify that
> this motion in fact presents a true emergency (as opposed to a matter that may need
> only expedited treatment) and requires an immediate ruling because the Court
> would not be able to provide meaningful relief to a critical, non-routine issue after
> the expiration of seven days. I understand that an unwarranted certification may
> lead to sanctions

Meanwhile, Judge Goodman scheduled a telephonic status conference for May 5, 2015. (D.E. 19.) Stone failed to appear at the telephonic status conference. (See D.E. 31.) Therefore, Judge Goodman issued an Order to Show Cause stating: "Defense counsel shall file a memorandum by May 7, 2015, showing cause why counsel did not participate in the mandatory telephone status hearing that was scheduled on May 5, 2015. Failure to timely submit a memorandum demonstrating good cause may result in a report and recommendation that the case be dismissed or in an order imposing other sanctions." (Id.) Judge Goodman's reference to "[d]efense counsel" was a scrivener's error, as Stone was not represented by counsel at the time[2]—a fact Judge Goodman later noted, (D.E. 39).

On May 7, 2015, the Court entered an Order Directing the Clerk to Enter Default Against Defendant Barbara Stone and Dismissing Counterclaim. ("Order of Default," D.E. 35.) The Order states:

> On April 28, 2015, the Court issued an Order (D.E. 28) requiring Defendant, Barbara Stone, to show cause why she did not comply with the Court's Orders of March 23, 2015 (D.E. 16) or April 23, 2015 (D.E. 20), respectively. The Court specifically stated: "Failure to show good cause for failing to comply with the Court's Orders may result in sanctions, including the entry of default against Defendant pursuant to Federal Rule of Civil Procedure 55." To date, Defendant has failed to respond to the Court's April 28, 2015, show cause order. The Court further notes that on May 5, 2015, Magistrate Judge Jonathan Goodman issued an Order (D.E. 31) requiring Defendant to show cause why she did not participate in a mandatory telephonic status hearing.

---

[2]     The Court later observed: "Although they are proceeding pro se, both parties have law degrees. Lustig is a member in good standing of the Florida Bar Association. See The Florida Bar Association, www.floridabar.org, Find a Lawyer, Roy Lustig (last visited Dec. 1, 2015). Stone has been disbarred in Florida, see The Florida Bar Association, www.floridabar.org, Find a Lawyer, Barbara Stone Kipnis (last visited Dec. 1, 2015), and her status with the New York Bar is listed as "Delinquent," see New York State Unified Court System, Attorney Detail for Barbara S. Kipnis, www.nycourts.gov (last visited Dec. 1, 2015) (a copy of Defendant's Attorney Detail as of March 6, 2015 can be accessed at D.E. 14-2)." (D.E. 64 at 2 n.1.)

To date, she has failed to respond to Judge Goodman's Order.[3]  The Court further notes that on two occasions now Defendant has instructed the clerk to file documents under seal without having filed a motion to seal, in violation of Local Rule 5.4.  Additionally, Defendant has on two occasions filed what she purported to be "emergency" applications for temporary restraining orders without having filed a Certification of Emergency, in violation of Local Rule 7.1(e).

The Court finds that Defendant has failed to defend this Action and the entry of default is appropriate pursuant to Federal Rule of Civil Procedure 55. The Court further finds that Defendant's repeated failures to comply with the Court's rules and Orders warrants dismissal of her [25] Counterclaim and Declaratory Judgment, filed May 1, 2015, pursuant to Federal Rule of Civil Procedure 41(b) and this court's inherent authority to manage its docket.  See Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005) (stating that a court's sua sponte dismissal for failure to comply with the rules of court may be based on Rule 41(b) or courts "inherent power to manage its docket"); Hildebrand v. Honeywell, Inc., 622 F.2d 179, 181 (5th Cir. 1980) (stating that a court may sua sponte dismiss a case under Rule 41(b)).

Accordingly, it is ORDERED AND ADJUDGED the Clerk shall enter default against Defendant Barbara Stone.  It is FURTHER ORDERED AND ADJUDGED that that Defendant Barbara Stone's Counterclaim and Declaratory Judgment, filed May 1, 2015, is DISMISSED.

(Id.)  Later the same day, the Clerk entered Default against Stone, (D.E. 36), and the Court

entered an Order referring the case to Judge Goodman for a determination of damages,

(D.E. 37).

On July 8, 2015, Judge Goodman held an evidentiary hearing on damages.  (See

D.E. 52.)  Stone failed to appear at the hearing.  (See id.)

On August 18, 2015, Judge Goodman issued a Report finding that Stone had

published several defamatory statements that were injurious to Lustig's reputation and

---

³       Stone timely responded to Judge Goodman's Show Cause Order on May 7, 2015 after the Court entered its Order of Default.  (See D.E. 38.)

standing in the community and caused him to lose at least one significant client with a

pending case.  (D.E. 58 at 7-8.)  Relevant here, Judge Goodman found that Stone

> used a fake email account to pose as Lustig and direct threats at Lustig and
> his business partner about investigations against their company along with a
> homophobic insult at Lustig's daughter's boyfriend.  (Trial Ex. 8).  Stone
> used the same account to email Lustig's business partner again and state that
> Lustig was committing "ruthless and unethical acts" and to draw his attention
> to the various internet sites where Stone had posted her scurrilous accusations
> against Lustig.  (Trial Ex. 11).  In other emails to Lustig's business partner
> (and Lustig's wife and daughter), Stone indicated that Lustig had engaged in
> "heath insurance fraud [that] will soon be investigated" (Trial Ex. 23), and
> that his partner should have a member of the family who is a state attorney
> "find out what Roy Lustig is doing!" (Trial Ex. 22). . . .
>
> Stone also emailed similar accusations against Lustig to scores of individuals
> and organizations, including all of the justices of the Florida Supreme Court,
> filing complaints with the Florida Bar and many representatives of the
> Florida and U.S. governments, and many national and local news
> organizations.  These emails included claims that Lustig: prepares fraudulent
> bills (Trial Exs. 21, 26, 27); changes court transcripts (Trial Ex. 21); makes
> "fraudulent court filings" (Trial Ex. 29); is "in a frenzy to empty [Stone's]
> mother's assets and cause her death to shield and cover up [his] conduct"
> (Trial Ex. 21); is a "body snatcher" and "an adult predator and like a child
> molester should be barred from involvement with elderly adults" (Trial Exs.
> 26, 27); is a "diabolical fraudster" (Trial Ex. 26); is a "thug attorney" and a
> "habitual liar" engaged in "fraud and lies and embezzlement" (Id.), as well
> as "fraud, perjury, extortion and [other] felony crimes" (Trial Ex. 29); and is
> "masterminding the criminal racketeering enterprise that is engaged in the
> attempted pre-meditated murder of my mother," while "extort[ing] over
> $250,000" from her (Trial Ex. 29). . . .
>
> . . . . Posing as Lustig, Lustig's daughter, and others, Stone sent a variety of
> emails to Lustig's daughter, many of which were also sent to Lustig, stating
> that Lustig's daughter: has an ugly nose, face, and "c_nt" (Trial Exs. 7, 9);
> should "start playing in a circus" (Trial Ex. 12); is a "little c_nt" and an "ugly
> c_nt" (Trial Exs. 12, 15); eats cat food (Trial Ex. 13); and takes drugs (Trial
> Ex. 16).
>
> Many of the emails attached pictures of Lustig's daughter and/or other family
> members.  (Trial Exs. 12, 13, 14, 15).  Stone sent another email to Lustig's
> wife and daughter, with an attached photograph of Lustig's daughter, stating

that Lustig's daughter is stupid and "so ugly like MAMA!"  (Trial Ex. 20).
Stone included a photograph of Lustig and his wife in her post on
ripoffreport.com where she accused Lustig of having committed criminal
acts to control disabled elderly persons and take their money.  (Trial Ex. 2).
Stone copied Lustig's wife on another email to Lustig, informing them that
she had posted another new report about Lustig on ripoffreport.com. (Trial
Ex. 17).

(Id. at 8.)   Judge Goodman recommended that the Court award Lustig $700,000 in

compensatory damages, $1 million in punitive damages, and injunctive relief—

specifically, he recommended that the Court order Stone to remove seven defamatory

internet postings and permanently enjoin her from republishing the defamatory statements

contained in those postings.  (Id. at 17-18.)

On August 31, 2015, Stone filed Objections to Judge Goodman's Report, arguing

that (1) the Court lacked subject matter jurisdiction because the Parties were not diverse,

and (2) "[n]o due process or evidentiary hearing was provided to the defendant and believe

No Notice of hearing was given to the Defendant."  (D.E. 59 at 1-2.)  However, she did not

object to any of the factual findings contained in the Report.  (See id.)

On September 2, 2015, Stone (purportedly through counsel)[4] filed an "Emergency"

Motion requesting that the Court set aside entry of default and permit her to challenge the

Court's subject matter jurisdiction.  (D.E. 61.)  The Motion also sought leave to file a

second set of Objections, and the admission pro hac vice of attorney Candice Schwager.

(See id. at 1.)  It is worth noting that although Stone styled her motion as an "emergency,"

---

[4]        The Motion contains a signature block for Houston, Texas attorney Candice
Leonard Schwager, but it is not signed.

she failed to certify that it contained a "true emergency" in violation of Local Rule 7.1(e) (now Local Rule 7.1(d)).

On December 7, 2015, the Court entered an Omnibus Order denying the request to set aside default, finding that Stone had willfully defaulted. ("Omnibus Order," D.E. 64 at 6 (citing Compania Interamaericana Export-Import, S.A. v. Compania Dominicana, 88 F.3d 948, 951-52 (11th Cir. 1996) (concluding that if a "party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief")).)  As an initial matter, the Court denied Stone's request to file a second set of Objections as procedurally improper and untimely, (id. at 5), and denied Ms. Schwager's request for admission pro hac vice for failure to comply with the Local Rules, (id. at 6).  The Court's Omnibus Order then overruled Stone's Objections to Judge Goodman's Report.  (See id. at 7-14.)  Relevant here, the Court rejected Stone's argument that entering judgment against her would violate due process because she was not provided notice of the damages hearing.  (Id. at 8-11.)  The Court also rejected Stone's argument that the Court lacked subject matter jurisdiction, finding that "all of the record evidence indicates that at the time this Action was filed, Defendant was a citizen and domiciliary of New York." (Id. at 13.)  And because the amount in controversy exceeded $75,000, the Court was vested with diversity jurisdiction.  (Id. at 14.)  Ultimately, the Court adopted Judge Goodman's recommendation on damages, entered Final Judgment in favor of Lustig and against Stone, entered a permanent injunction against Stone, and closed the case.  (Id. at 14-15.)

On January 6, 2016, Stone appealed the Court's Omnibus Order. (D.E. 72.) On March 8, 2017, the Eleventh Circuit issued its Mandate affirming the Court's Judgment, finding that (1) the Court had subject matter jurisdiction over the case, (Mandate, D.E. 109 at 4), and (2) the Court did not abuse its discretion in denying Stone's motion to set aside default:

> The record shows that notice was provided to Stone at her New York address, which was the only address she had provided to the court at the time. Because Stone was mailed filings at her address of record, she was provided with notice in a manner reasonably calculated to inform her of the events pertaining to her case, even if she did not actually receive that notice.

(Id. at 6 (citing Jones v. Flowers, 547 U.S. 220, 226 (2006)).)

On March 21, 2017, Lustig filed a Motion for Order to Show Cause Why Defendant Should not be Held in Contempt, asserting that Stone failed to comply with the Court's Omnibus Order by (1) failing to remove the defamatory internet postings and (2) republishing the statements contained in the internet postings. (D.E. 111 at 2.) The Court referred the Motion to Judge Goodman, (D.E. 112), who issued a Report and Recommendations and Certification of Facts, (D.E. 133). Therein, Judge Goodman found that Lustig had met his initial burden of showing that Stone failed to comply with the Court's Omnibus Order, and recommended that the Court order Stone to appear at a hearing to show cause why she should not be found in contempt. (Id. at 6.) The Report provided the Parties fourteen days to file objections, (id. at 7), but no objections were filed. Consequently, on January 9, 2018, the Court adopted Judge Goodman's Report and Recommendation and Certification of Facts, granted Lustig's Motion for Order to Show Cause, and scheduled a show cause hearing. (D.E. 138.) The Court later granted Stone's

Motion requesting a continuance of the show cause hearing (because she was incarcerated) and rescheduled the show cause hearing. (D.E. 143.) On June 26, 2018, the Court was required to continue the show cause hearing a second time. (D.E. 163.) To date, the Court has not rescheduled the show cause hearing.

On April 16, 2018, Stone filed three pro se "Emergency" Motions to Produce Documents, (D.E. 144, 146, 147), and a pro se "Emergency" Motion to Quash Subpoena, (D.E. 145). The Court later denied those motions, finding:

> The Motions associated with Docket Entries [145], [146], and [147] are related solely to the Parties' state court case, and request relief this Court is without jurisdiction to grant. The issues raised in the Motion associated with Docket Entry [144] may be partially related to this case, but involve moot issues. Specifically, Defendant complains of an "illegal sale" sought by Plaintiff. This may be a reference to Plaintiff's [126] Motion for Partial Enforcement of Money Judgment by Judicial Sale of Personal Property, in which Plaintiff seeks to enforce the Court's judgment by ordering the sale of Plaintiff's interest in two LLCs. Upon a [135] Report and Recommendation from the Magistrate Judge, the Court denied that Motion without prejudice for failure to satisfy the requirements of Section 605.0503(4), Florida Statutes. (D.E. [137].) Accordingly, assuming arguendo that this is the "illegal sale" Defendant references, the Court has denied Plaintiff's Motion and that issue is now moot. To the extent Defendant is referring to a different "illegal sale," it concerns an issue over which this Court is without jurisdiction.

(D.E. 150.) It is also worth noting that Stone failed to certify that any of these "emergency" motions contained a "true emergency," in violation of Local Rule 7.1(d).

On April 16, 2018, Stone also filed a pro se Motion to Vacate Judgment. (D.E. 148.) Stone first argued that the Court should vacate judgment under Rule 60(b)(3) on the grounds that the judgment was procured by fraud, misrepresentation, or the misconduct of Lustig—specifically, she asserted that she did not send the "obscene" emails Judge

Goodman discussed as part of the basis for the monetary judgment.  (D.E. 148 at 2.) Second, she argued that the Court should vacate the Judgment as void under Rule 60(b)(4) because she was not present at the damages hearing.  (Id. at 3, 5.)  Finally, she argued that the Judgment constitutes a gross miscarriage of justice.  (Id. at 6.)

On April 18, 2018, the Court entered an Order denying the Motion to Vacate Judgment, finding that: (1) "[t]o the extent that Defendant argues that the judgment was procured by fraud, misrepresentation, or Plaintiff's misconduct, it is untimely because it was filed more than two years after the entry of judgment"; and (2) "[t]o the extent that Defendant argues that the judgment is void or constitutes a gross miscarriage of justice, the Court finds that it is untimely because it was not 'made within a reasonable time . . . after the entry of the judgment[.]'" ("April 18, 2018 Order," D.E. 149 (quoting Fed. R. Civ. P. 60(c)(1)).)  On May 18, 2018, Stone, through newly-retained attorney Arthur J. Morburger, appealed the Court's April 18, 2018 Order.  (D.E. 158.)  On August 7, 2019, the Eleventh Circuit issued an opinion affirming the Court's April 18, 2018 Order denying Stone's Motion to Vacate Judgment.  See Lustig v. Stone, Case No. 18-12106 (11th Cir. Aug. 7, 2019).  It found that Stone had failed to brief (and therefore abandoned) the timeliness issue, but nevertheless found that "the district court did not err in denying her Rule 60(b)(4) motion as untimely . . . ."  Id. at 3.  It further found that Stone had "waived her due process arguments by waiting two years after entry of judgment to raise them."  Id. at 4.  On August 21, 2019, Stone filed a petition for rehearing and rehearing en banc, which the Eleventh Circuit denied.  Mandate issued January 31, 2020.  (D.E. 212.)

Meanwhile, on May 4, 2018, Stone filed a <u>pro se</u> Motion to Vacate Judgment and to Set Aside Judgment for Fraud on the Court.  (D.E. 151.)  The Court denied that Motion without prejudice "to being refiled through counsel if appropriate."  (D.E. 172.)

On July 2, 2018, Stone filed a <u>pro se</u> Motion to Cancel Order to Show Cause Hearing and Declaration of Truth.  (D.E. 166.)  On July 5, 2018, the Court entered an Order striking that Motion pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file <u>pro se</u> motions.  (D.E. 167.)

On September 14, 2018, Stone filed a <u>pro se</u> Motion to Disqualify Judge Joan Lenard and Magistrate Judge Jonathan Goodman and Set Aside, Void and Vacate Their Illegal Orders.  (D.E. 170.)  The same day, Stone filed a <u>pro se</u> Motion to Order FBI and Department of Justice Investigation Into this Matter.  (D.E. 171.)  On September 17, 2018, the Court struck those Motions pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file <u>pro se</u> motions.  (D.E. 172.)

On March 13, 2019, Stone, through counsel, filed a Motion for Relief from Judgment and Default Order, seeking to vacate Judgment under Rules 60(a), 60(b)(4), 60(b)(6), and 60(d)(3).  (D.E. 174.)  On April 29, 2019, the Court entered an Order denying that Motion.  ("April 29, 2019 Order," D.E. 179.)  On May 29, 2019, Stone filed a Notice of Appeal of the Court's April 29, 2019 Order.  (D.E. 191.)  That appeal is currently pending before the Eleventh Circuit.  <u>See</u> <u>Lustig v. Stone</u>, Case No. 19-12112 (11th Cir. docketed May 31, 2019).

Meanwhile, on May 8, 2019, Stone, through counsel, filed a Motion for Disqualification, seeking to disqualify the undersigned Judge from presiding over this

matter.  (D.E. 180.)   The basis for the motion is that the undersigned allegedly has "extrajudicial prejudicial knowledge of the parties' Bar status and of certain extraneous <u>dehors</u> the record internet disclosures." (<u>Id.</u> at 1.)  Lustig filed a Response observing that "all of the facts cited by Stone as having been obtained extrajudicially are actually part of the record, having been introduced through various filings by Plaintiff Roy R. Lustig." (D.E. 181 at 1.)

On May 17, 2019, Stone filed a Suggestion of Bankruptcy on the docket.  (D.E. 182.)   On May 24, 2019, the Court entered an Order staying the case pending the bankruptcy proceedings, and denying without prejudice all pending motions (and specifically the Motion for Disqualification).  (D.E. 189.)

On November 8, 2019, Stone filed a <u>pro se</u> "Emergency Motion to Set Aside Illegal, Corrupt, VOID Judgment that is the Product of Massive Criminal and Civil Human Rights Violations; Other Extrajudicial Crimes and Violations of Due Process; and to Embezzlement; Theft and Other Felony Crimes for which there is No Immunity[, and] Demand for Jury Trial." (D.E. 197.)  The same day, the Court entered an Order striking that Motion pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file <u>pro se</u> motions. (D.E. 198.)  Alternatively, the Court struck the Motion for failure to comply with Local Rule 7.1(d), which requires a party to certify that an "emergency" motion presents a "true emergency."[5]  (<u>Id.</u>)

---

[5]    <u>See</u> <u>supra</u> Note 1.

On November 19, 2019, Mr. Morburger filed an "Emergency Motion to Withdraw" which states, in its entirety:

> Arthur J. Morburger files this emergency motion to withdraw from representation of Defendant in the above-styled case in the District Court for the Southern District of Florida (but is not withdrawing in the pending Eleventh Circuit appeals) at the request of Defendant Barbara Stone 19 W. Flagler St. Ste. 404 Miami, FL 33130, as required by the Court.

(D.E. 199.)   The address Mr. Morburger provided for Stone is Mr. Morburger's office address.   (See id.)   Mr. Morburger attached to his Motion a "Certification of Emergency Motion to Withdraw," which states, in its entirety:

> Arthur J. Morburger files this certification of emergency motion to withdraw as Defendant Barbara Stone has an emergency matter pending sui juris in the above-styled case in the District Court for the Southern District of Florida.

(D.E. 199-1.)   Lustig filed a Response opposing the Motion to Withdraw.   (D.E. 202.)

On November 25, 2019, Stone filed three pro se Motions: (1) an "Emergency Motion to Supplement to Emergency Motion to Set Aside Intentional Illegal Void Order; Emergency Motion to Set Aside Illegal Order 'Striking' Stone's Emergency Motion; and Concurrent Emergency Demand for Jury Trial," (D.E. 203); an "Emergency Motion to Transfer this Matter to Federal Law Enforcement; and Concurrent Demand for Jury Trial," (D.E. 204); and (3) an "Emergency Motion for Jury Trial," (D.E. 205).   On November 26, 2019, the Court entered an Order striking those motions pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file pro se motions.   (D.E. 206.) The Court further noted that even if Stone had been authorized to file the Motions, the Court was without jurisdiction to entertain their merits because they presented issues that

were before the Eleventh Circuit Court of Appeals in Case Nos. 18-12106 and 19-12112.

(Id.)  The Court also noted that the Motions failed to properly certify that they presented

"true" emergencies in violation of Local Rule 7.1(d), and that, in any event, the Court had

reviewed the Motions and found that none of them presented a true emergency.  (Id.)

On December 11, 2019, the Court denied Mr. Morburger's Emergency Motion to

Withdraw.  (D.E. 207.)  The Court initially noted that the Motion failed to comply with

Local Rule 7.1(d) because it did not set forth in detail the nature of the emergency, the date

by which a ruling is necessary, and the reason the ruling is needed by the stated date, nor

did it certify that the Motion presented a "true emergency."  (Id. at 6.)  Regardless, the

Court found no basis for granting leave to withdraw:

> At Stone's direction, Mr. Morburger seeks to withdraw only from these
> District Court proceedings.  (See Mot. at 1 (requesting to withdraw "from
> representation of Defendant in the above-styled case in the District Court for
> the Southern District of Florida (but is not withdrawing in the pending
> Eleventh-Circuit appeals) at the request of Defendant Barbara Stone").)  It is
> clear that the only reason Stone has requested Mr. Morburger to withdraw
> (and/or has terminated their legal relationship solely with regard to these
> District Court proceedings) is so she will no longer be prohibited by Local
> Rule 11.1(d)(4) from filing pro se motions.  (See D.E. 199-1.)  The Court
> finds that this is not a good reason for granting withdrawal, especially
> considering that the issues presented by Stone's pro se motions are currently
> before the Eleventh Circuit Court of Appeals in two separate cases and,
> therefore, the Court is without jurisdiction to address their merits.  See Lustig
> v. Stone, Case No. 18-12106 (11th Cir. Aug. 21, 2019); Lustig v. Stone, Case
> No. 19-12112-J (11th Cir. November 13, 2019).  The Court further finds that
> Stone's pro se motions in a closed case that is on appeal greatly prejudice
> Lustig who, to avoid default, must file a response to each motion, and greatly
> harm the administration of justice.  Stone has filed at least thirteen motions
> since the Eleventh Circuit issued its Mandate affirming the Court's Judgment
> on March 8, 2017; the time the Court must spend considering and addressing
> Stone's motions in writing could be spent on other cases.  Consequently, Mr.
> Morburger is not permitted to withdraw as counsel.

(Id. at 6-7.)

The next day, December 12, 2019, Stone filed a pro se "Emergency Motion for Jury Trial to Set Aside Striking of Resubmitted Emergency Motion to Set Aside Illegal, Corrupt Void Judgment for Which There is No Immunity and Supplement Thereto and to Declare All Orders and Judgment Entered Herein Illegal and Void." (D.E. 208.)  On December 16, 2019, the Court entered an Order striking that Motion pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file pro se motions.  (D.E. 210.) The Court further observed that Stone ultimately sought vacatur of the Court's judgment and related orders, but those issues were before the Eleventh Circuit in Case Nos. 18-12106 and 19-12112, and the Court was therefore without jurisdiction to entertain the merits of the Motion.  (Id.)  The Court also noted that the Motion failed to properly certify that it presented a "true" emergency in violation of Local Rule 7.1(d), and that, in any event, the Court had reviewed the Motion and found that it did not present a true emergency.  (Id.)

On May 27, 2020, Stone filed two pro se Motions: (1) an "Emergency Motion [that] Sets Forth Irrefutable Felony Crimes Perpetrated by Roy R. Lustig in a Criminal RICO to Obtain Illegal Financial Windfall and Theft of Assets of a Vulnerable Adult in Combination with Massive Criminal and Civil Human Rights Deprivations and Obstruction of Justice by Judge Joan Lenard and Magistrate Jonathan Goodman All of Whom are Using the United States Federal Courts for Illegal Purposes for which they are not Intended Whereby Immediate Relief is Mandated and Demanded; Motion for Re-Hearing; Setting Aside Illegal Void Judgment, and other Relief; and Demand for Reporting of Crimes by Roy R. Lustig and Criminal Restitution; Reparation and Sanctions and for

Compliance by all Courts, Including Appellate Court with Stone's Fundamental, Inalienable Constitutional Rights; Mandate to Report Crimes; and Adherence to Fundamental Principles Whereby the United States Courts are not Subverted for Illegal Activities," (D.E. 217); and (2) an "Emergency Motion to Report Roy L. [sic] Lustig to Law Enforcement and the Florida Bar and for Restitution, and Criminal Sanctions," (D.E. 218). On June 2, 2020, the Court entered an Order striking those Motions pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file pro se motions, and, alternatively, for noncompliance with the Local Rules. (D.E. 222.) The Court further observed that Stone ultimately sought vacatur of the Court's judgment and related orders, but those issues were before the Eleventh Circuit in Case No. 19-12112 and the Court was therefore without jurisdiction to entertain the merits of the Motions. (Id.)

On June 22, 2020, Stone filed four pro se documents: (1) "Emergency Declaratory Judgment Summary Pursuant to Rule 57 and 28 U.S.C. § 2201 Applicable to All Emergency Declaratory Judgments Filed Concurrently; and Demand for Relief; and Demand for Joan Lenard and All 'Officers of the Court' Involved in this Sordid Scandal to Comply with the Law and Judicial Canons and Report the Criminal Activities of Roy R. Lustig Including the Use of Electronic Means to Circulate Obscene Materials to Obtain Illegal Financial Gain; Perjury and Suborning Perjury; and Theft and Embezzlement of the Assets of a Vulnerable Adult to Federal and State Law Enforcement for Criminal Investigation and to the Florida Bar for Discipline/Disbarment," (D.E. 223); (2) "Emergency Declaratory Judgment Pursuant to Rule 57 and 28 U.S.C. § 2201 Emergency Demand for Response by Joan Lenard and Demand for Jury Trial and Relief," (D.E. 224);

(3) "Emergency Declaratory Judgment Pursuant to Rule 57 and 28 U.S.C. § 2201 Demand for Response by Roy R. Lustig," (D.E. 225); and (4) "Emergency Certification," (D.E. 226).  On June 25, 2020, the Court entered an Order striking those filings pursuant to Local Rule 11.1(d)(4), which provides that a party who has an attorney cannot file pro se motions, and, alternatively, for noncompliance with the Local Rules.[6]  (D.E. 227.)  To the extent that Stone was attempting to assert a "declaratory judgment" counterclaim, the Court struck it as untimely, finding: "This case has been closed since December 7, 2015 when the Court entered Final Judgment in favor of Plaintiff and against Defendant.  (See D.E. [64].)  The Eleventh Circuit issued its Mandate affirming the Courts Judgment on March 8, 2017. (D.E. [109].)  Consequently, the merits of the Parties' disputes are no longer before the Court."  (Id.)  The Court further observed that Stone ultimately sought vacatur of the Court's judgment and related orders, but those issues were before the Eleventh Circuit in Case No. 19-12112 and the Court was therefore without jurisdiction to entertain the merits of the Motions.  (Id.)

## II.    Discussion

Federal district courts have the power under the All Writs Act, 28 U.S.C. § 1651, to enjoin vexatious litigants from filing actions in both judicial and non-judicial forums, provided the injunction does not completely foreclose a litigant from any access to the courts.  See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 n.15, 1298 (11th Cir. 2002); see also Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993); In re

---

[6]    Notably, the "Emergency Certification" failed to comply with Local Rule 7.1(d)(1), which is the Local Rule that prescribes what the emergency certification "must" say.

Hartford Textile Corp., 659 F.2d 299, 305 (2d Cir. 1981) ("The United States Courts are not powerless to protect the public, including litigants . . . from the depredations of those . . . who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings.").

The traditional standards applicable to issuance of an injunction do not apply to the issuance of an injunction against a vexatious litigant.  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1100-01 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); see also Ray v. Lowder, No. 5:02-CV-316-OC-10GRJ, 2003 WL 22384806, at *2 (M.D. Fla. Aug. 29, 2003) (citing In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984)). Instead, "[a] history of litigation entailing 'vexation, harassment and needless burden on the courts and their supporting personnel' is enough."  Ray, 2003 WL 22384806, at *2 (citing In re Martin-Trigona, 737 F.2d at 1262).

> In making the determination whether the litigant's conduct is sufficient to justify the entry of what is referred to as a Martin–Trigona order, the following factors provide guidance: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. (citing Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)) (footnotes omitted).  Each of these factors supports a finding that Defendant Barbara Stone is a vexatious litigant who should be restricted from making further filings.

### a.    History of Litigation

First, the Court looks to Stone's history of litigation in this Court and elsewhere. Ray, 2003 WL 22384806, at *2 (citing Safir, 792 F.2d at 24).  The Court has identified eighteen separate federal cases in which Stone has, in some way, challenged her mother's guardianship proceedings and/or disparaged Roy Lustig (among many others).[7]  The Court will discuss them in chronological order below.[8]

### 1.    Stone v. Genden, 14-cv-03404-LAP (S.D.N.Y. May 6, 2014)

On May 6, 2014, Stone filed in the United States District Court for the Southern District of New York a pro se "Ex Parte Emergency Application for a Temporary Restraining Order and Order to Show Cause why Jacqueline Hertz and Blaire Lapides the Abusive Guardians for her Mother Should Not be Enjoined Prohibited and Restrained from Excluding Barbara Stone from Unfettered Association with her Mother."  Stone v. Genden, et al., 14-cv-03404-LAP, D.E. 1 (S.D.N.Y. May 6, 2014).  She also filed a pro se thirty-four page complaint (inclusive of exhibits) against six defendants, including Lustig, Hertz, Lapides, and Judge Genden.  Id., D.E. 2.  Briefly, the complaint accused the defendants of

---

[7]    Two of those cases—Lustig v. Stone, Case No. 4:18-cv-00469-JGZ (D. Ariz. Mar. 20, 2018) and Lustig v. Stone, Case No. 4:18-mc-00004-JGZ-BPV (D. Ariz. Mar. 20, 2018)—are related and will be discussed under a single heading.  See infra Section II(a)(7).

[8]    The Court takes judicial notice of the documents filed in the cases discussed below for the limited purpose of recognizing the filings and judicial acts they represent.  See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

engaging in an organized enterprise to exploit vulnerable adults, including Helen Stone.

Id.  Stone claimed to have been

> subjected to fraud, illegal color of law crime, defamation, slander, malicious prosecution, insults, threats, entrapment and criminal prosecution, extortion, exploitation, emotional infliction of distress, vilification, malicious and unlawful interference with her relationship with her mother and financial hardship delivered viciously and vindictively at the hands of predators in the Vulnerable Adult Exploitation Enterprise.

Id. at 3-4.  On May 8, 2014, Stone withdrew her complaint to be refiled at a later date.  Id.,

D.E. 4.  On May 13, 2014, the case was dismissed.  Id., D.E. 5.

> ### 2.   Stone v. Hertz, et al., 14-cv-03478-LAP (S.D.N.Y. May 12, 2014); Stone v. Hertz, et al., Case No. 14-21776-Civ-Williams (S.D. Fla. May 14, 2014)

On May 12, 2014, Stone filed a rambling fifty-page pro se complaint (exclusive of

exhibits) against twelve defendants—including Lustig, Hertz, Lapides, Judge Genden, the

State of Florida, then-Florida Governor Rick Scott, and then-Florida Attorney General Pam

Bondi—in the United States District Court for the Southern District of New York.  Stone

v. Hertz, et al., 14-cv-03478-LAP (S.D.N.Y. May 12, 2014).  On May 14, 2014, the case

was transferred to the Southern District of Florida and assigned to Judge Williams.  Stone

v. Hertz, et al., 14-21776-Civ-Williams, D.E. 4 (S.D. Fla. May 14, 2014).   Stone

subsequently filed a rambling seventy-page pro se Amended Complaint (exclusive of

exhibits, which were another 318 pages) which challenges the legality of her mother's

guardianship proceedings, accuses all of those involved of wrongdoing, and compares her

mother's guardianship to the Holocaust.  Id., D.E. 10 at 20.  After Judge Williams denied

Stone's pro se "emergency" Motion for a hearing and an injunction, see id., D.E. 23, Stone

filed a pro se "emergency" motion for Judge Williams's recusal, id., D.E. 32.  Stone filed

at least three other pro se "emergency" motions in that case, see id., D.E. 16, 38, 57, all of

which were either denied or denied as moot, see id., D.E. 19, 76.  Stone also filed an

emergency petition to the Eleventh Circuit for a writ of mandamus in which she asked the

court to, inter alia:

> (1) compel a Florida court and Florida judicial officials to render void an
> [sic] probate judge's order barring her from visiting her elderly mother in a
> health facility; (2) release her from the "false imprisonment" imposed after
> she had violated the order; (3) order both state and federal judicial officials
> to prosecute the individuals who had abused her mother under the guise of a
> court-ordered guardianship; (4) order the Florida State Bar to suspend or
> revoke the law license of one of the offending individuals; and (5) adjudicate
> a Florida state attorney guilty of fraud and perjury.

See id., D.E. 66.  The Eleventh Circuit denied the petition.  See id.  Judge Williams

ultimately dismissed most of Stone's claims with prejudice, id., D.E. 76.  Although Judge

Williams provided Stone leave to file a Second Amended Complaint against two

defendants solely as to malpractice and breach of fiduciary duty claims, id. at 21, Stone

failed to file a Second Amended Complaint.

### 3.    Stone v. Scott, et al., Case No. 14-23318-Civ-Scola (S.D. Fla. Sept. 8, 2014)

On September 8, 2014, Stone filed a rambling thirty-five page pro se "Emergency

Verified Complaint and Emergency Injunction" (inclusive of exhibits) against then-Florida

Governor Rick Scott, then-Florida Attorney General Pam Bondi, and several others.  Stone

v. Scott, et al., Case No. 14-23318-Civ-Scola, D.E. 1 (S.D. Fla. Sept. 8, 2014).  In that case,

Stone appears to allege that as a result of actions Stone took in her mother's guardianship

proceedings, the defendants discriminated and retaliated against Stone.  See id.  One of the

stated bases for the Court's jurisdiction was the federal statute prohibiting genocide, 18 U.S.C. § 1091.  Id. at 2.  On September 17, 2014, Judge Scola sua sponte dismissed the Complaint on several grounds, including failure to state a claim under Rule 12(b)(6) and 28 U.S.C. § 1915(e), finding that Stone's "claims are fantastical and delusional."  Id., D.E. 15.

### 4.  Lustig v. Stone, 15-20150-Civ-Lenard (S.D. Fla. Jan. 15, 2015)

On January 15, 2015, Lustig instituted the instant lawsuit against Stone.  (D.E. 1.) Although Stone is the Defendant in this case, she attempted to file a rambling sixty-page pro se Counterclaim (exclusive of exhibits) against Lustig, Hertz, Lapides, Judge Genden, the State of Florida, the Florida Bar Association, and many others.  (D.E. 25.)  Broadly speaking, the Counterclaim accuses the defendants of fraud, racketeering, and engaging in a criminal enterprise in regard to her mother's guardianship proceedings.  (See id.)  The Court dismissed the Counterclaim upon finding that Stone willfully defaulted.  (D.E. 35.)

Stone also attempted to file an "Amended Complaint and Emergency Application for Temporary Restraining Order & Expedited Hearing On Preliminary Injunction" naming Judge Genden as the lone defendant.  (D.E. 32.)  The Court entered an Order striking the Amended Complaint, observing: "This case is one by Plaintiff Roy Lustig against Stone for defamation per se, intentional infliction of emotional distress, interference with advantageous business relationship, and injunctive relief.  (See D.E. 5.)  Stone's 'Amended Complaint' names only Judge Genden as a Defendant and is completely irrelevant to this Action."  (D.E. 34.)

24

On December 7, 2015, the Court entered Final Judgment in favor of Lustig and against Stone, ordered Stone to remove the defamatory statements from the internet, permanently enjoined her from continuing to publish or republishing the defamatory statements, and closed the case. (D.E. 64.) The Eleventh Circuit subsequently affirmed the Court's Judgment. (D.E. 109.)

Stone later filed a Motion to Vacate Judgment, (D.E. 148), which the Court denied, (D.E. 149). The Eleventh Circuit subsequently affirmed the Court's Order denying Stone's Motion to Vacate Judgment. Lustig v. Stone, Case No. 18-12106 (11th Cir. Aug. 7, 2019).

Stone also filed a Motion for Relief From Judgment and Default Order, (D.E. 174), which the Court denied, (D.E. 179). Stone has appealed that Order. Lustig v. Stone, Case No. 19-12112 (11th Cir. May 31, 2019).

Stone has also filed numerous other motions and papers, all of which were meritless and utterly frivolous. (See, e.g., D.E. 170 ("Motion to Disqualify Judge Joan Lenard and Magistrate Judge Jonathan Goodman and Set Aside, Void and Vacate Their Illegal Orders"); D.E. 171 ("Motion to Order FBI and Department of Justice Investigation into this Matter"); D.E. 180 ("Motion for Disqualification"); D.E. 197 ("Emergency Motion to Set Aside Illegal, Corrupt VOID Judgment that is the Product of Massive Criminal and Civil Human Rights Violations; Other Extrajudicial Crimes and Violations of Due Process; and Criminal Acts as Accomplices and Accessories to Embezzlement; Theft and Other Felony Crimes for Which there is no Immunity"); D.E. 203 ("Emergency Supplement to Emergency Motion to Set Aside Intentional Illegal Void Order; Emergency Motion to Set Aside Illegal Order 'Striking' Stone's Emergency Motion; and Concurrent Emergency

Demand for Jury Trial"); D.E. 204 ("Emergency Motion to Transfer this Matter to Federal Law Enforcement"); D.E. 205 ("Emergency Motion for Jury Trial"); D.E. 208 ("Emergency Motion for Jury Trial to Set Aside Striking of Resubmitted Emergency Motion to Set Aside Illegal, Corrupt Void Judgment for which there is No Immunity and Supplement Thereto and to Declare All Orders and Judgment Entered Herein Illegal and Void"); D.E. 217 ("Emergency Motion [that] Sets Forth Irrefutable Felony Crimes Perpetrated by Roy R. Lustig in a Criminal RICO to Obtain Illegal Financial Windfall and Theft of Assets of a Vulnerable Adult in Combination with Massive Criminal and Civil Human Rights Deprivations and Obstruction of Justice by Judge Joan Lenard and Magistrate Jonathan Goodman All of Whom are Using the United States Federal Courts for Illegal Purposes for which they are not Intended Whereby Immediate Relief is Mandated and Demanded; Motion for Re-Hearing; Setting Aside Illegal Void Judgment, and other Relief; and Demand for Reporting of Crimes by Roy R. Lustig and Criminal Restitution; Reparation and Sanctions and for Compliance by all Courts, Including Appellate Court with Stone's Fundamental, Inalienable Constitutional Rights; Mandate to Report Crimes; and Adherence to Fundamental Principles Whereby the United States Courts are not Subverted for Illegal Activities"); D.E. 218 ("Emergency Motion to Report Roy L. [sic] Lustig to Law Enforcement and the Florida Bar and for Restitution, and Criminal Sanctions"); D.E. 223 ("Emergency Declaratory Judgment Summary Pursuant to Rule 57 and 28 U.S.C. § 2201 Applicable to All Emergency Declaratory Judgments Filed Concurrently; and Demand for Relief; and Demand for Joan Lenard and All 'Officers of the Court' Involved in this Sordid Scandal to Comply with the Law and Judicial Canons

and Report the Criminal Activities of Roy R. Lustig Including the Use of Electronic Means to Circulate Obscene Materials to Obtain Illegal Financial Gain; Perjury and Suborning Perjury; and Theft and Embezzlement of the Assets of a Vulnerable Adult to Federal and State Law Enforcement for Criminal Investigation and to the Florida Bar for Discipline/Disbarment"); D.E. 224 ("Emergency Declaratory Judgment Pursuant to Rule 57 and 28 U.S.C. § 2201 Emergency Demand for Response by Joan Lenard and Demand for Jury Trial and Relief"); D.E. 225 ("Emergency Declaratory Judgment Pursuant to Rule 57 and 28 U.S.C. § 2201 Demand for Response by Roy R. Lustig").

This case has also spawned litigation in the District of Arizona, where Lustig sought to execute this Court's Judgment upon assets Stone owns in Arizona, and several cases involving Stone in the United States Bankruptcy Court in the District of Arizona and the Southern District of Florida.  Stone exhibits the same erratic behavior in those cases, which will be discussed in their chronological order below.  (See infra Section II(a)(7) – (11).)

### 5.   Stone v. Brennan, et al., Case No. 15-20810-Civ-Altonaga (S.D. Fla. Feb. 27, 2015)

On February 27, 2015, Stone filed a rambling fifty-seven-page pro se Complaint (inclusive of exhibits) against then-Assistant State Attorney Annette del Aquila, and then-state court Judge Victoria Brennan.  Stone v. Brennan, et al., Case No. 15-20810-Civ-Altonaga, D.E. 1 (S.D. Fla. Feb. 27, 2015).  Like the complaint in Case No. 14-23318-Civ-Scola, the complaint in Case No. 15-20810-Civ-Altonaga based its jurisdiction in part on the federal statute prohibiting genocide, 18 U.S.C. § 1091.  Id., D.E. 1 at 2.  The complaint accuses Ms. del Aquila of obstructing justice, perjury, and failing to investigate Stone's

report of elder abuse against her mother.  See id. at 7-9.  It accuses Judge Brennan of obstructing justice, conspiring with the state attorney, tampering with evidence, and denying Stone a hearing regarding her mother's alleged abuse.  See id. at 9-11.  On March 9, 2015, Judge Altonaga dismissed the complaint for failure to state a claim pursuant Rule 12(b)(6) and 28 U.S.C. § 1915(e), on immunity grounds, and for lack of subject matter jurisdiction.  Id., D.E. 6.

### 6. <u>Stone v. Genden, et al.</u>, Case No. 15-61004-Civ-Zloch (S.D. Fla. May 14, 2015)

On May 14, 2015—one week after this Court entered default against Stone and dismissed her Counterclaim—Stone filed a rambling fifty-five-page pro se complaint (inclusive of exhibits) against Judge Genden, Lustig, Hertz, Lapides, and others.  Stone v. Genden, et al., Case No. 15-61004-Civ-Zloch, D.E. 1 (S.D. Fla. May 14, 2015).  Briefly, the complaint challenges Judge Genden's authority to preside over the guardianship proceedings and seeks an injunction against all of the defendants named therein.  See id. The complaint was followed by a thirty-four-page "emergency" motion for a temporary restraining order filed by attorney Candice Schwager appearing pro hac vice on Stone's behalf, id., D.E. 10, which was stricken by the court, id., D.E. 17.  Ms. Schwager then filed a twenty-page "emergency" motion for a temporary restraining order that included over two-hundred pages of exhibits.  Id., D.E. 18, 18-1.  The court ultimately denied the motion for a temporary restraining order.  Id., D.E. 50.  A magistrate judge also issued a Report recommending that the Court grant the defendants' motions to dismiss, but Stone filed a Notice of Voluntary Dismissal before the Court could rule on the Report.  Id., D.E. 64.

Prior to the voluntary dismissal, Judge Genden moved the court to sanction Stone. Id., D.E. 46.  In the Motion, Judge Genden argued that Rule 11 sanctions were appropriate due to Stone's unceasing, frivolous attempts to undermine the state court guardianship proceedings through federal litigation.  Id. at 2-3.  Judge Genden sought an order enjoining Stone from filing any new civil action related to the guardianship proceedings without first obtaining an order from a District Court Judge that the proposed action states a claim upon which relief can be granted and is not presented for an improper purpose.  Id. at 3.  On August 20, 2015, Stone responded to the Motion for Sanctions asserting that "the Court cannot impose monetary sanctions[9] unless a show cause order is first issued prior to PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL, which has not occurred given that PLAINTIFF files her timely NOTICE OF DISMISSAL prior to any such issuance by the Court."  Id., D.E. 63 at 8.  The same day, Stone filed a Notice of Voluntary Dismissal. Id., D.E. 64.  On August 24, 2015, Judge Zloch entered a Final Order of Dismissal and closed the case.  Id., D.E. 67.

> **7.**   **Lustig v. Stone, Case No. 4:18-cv-00469-JGZ (D. Ariz. Mar. 20, 2018);**
> **Lustig v. Stone, Case No. 4:18-mc-00004-JGZ-BPV (D. Ariz. Mar. 20, 2018)**

On March 20, 2018, Lustig registered this Court's Judgment in the United States District Court for the District of Arizona in two separate cases, seeking to execute the Judgment upon assets owned by Stone in that District.  Lustig v. Stone, Case Nos. 4:18-cv-00469-JGZ, 4:18-mc-00004-JGZ-BPV, D.E. 1, 4 (D. Ariz. Mar. 20, 2018).

---

9        Judge Genden's Motion does not request monetary sanctions.  (See D.E. 46.)

After Lustig obtained a writ of garnishment in Case No. 4:18-cv-00469-JGZ, D.E. 5, and writ of execution, id., D.E. 9, Stone began her assault on the legitimacy of the proceedings.  See id., D.E. 17, 20, 25, 31, 32.  When the court was not receptive to her arguments, Stone filed five motions to disqualify United States District Judge Jennifer G. Zipps, id., D.E. 40, 83, 120, 171, 186, and three motions to disqualify United States Magistrate Judge Bernardo Velasco, id., D.E. 29, 86, 121.  Those motions were denied. See id., D.E. 75, 94, 98, 113, 122, 200.  When the case was reassigned to Magistrate Judge Eric J. Markovich, id. D.E. 146, Stone moved to disqualify him twice, id., D.E. 172, 181. The first motion was denied, id., D.E. 175, and the second motion was denied as moot when the case was reassigned to Magistrate Judge Maria Davila, id., D.E. 182.  Stone then moved to disqualify Judge Davila, id., D.E. 193, but the motion was denied, id., D.E. 196. One of the motions states that Stone filed a criminal complaint against Judge Zipps seeking to disqualify her and to void her "illegal void order[.]"  Id., D.E. 186 at 2.  The motion accuses Judge Zipps of colluding with a magistrate judge, conducting an "illegal ex parte proceeding," failing to report the "criminal acts of adverse party, Roy R. Lustig ('Embezzler Lustig') under Judicial Canons," issuing illegal orders, illegally garnishing Stone's social security account, and many other misdeeds.  Id. at 3-12.  On May 15, 2019, the court stayed the case pursuant to 11 U.S.C. § 362(a)(2) after involuntary bankruptcy proceedings were instituted against Stone.  Id., D.E. 200.

Stone made many similar filings in Case No. 4:18-mc-00004-JGZ-BPV (D. Ariz. Mar 20, 2018).  See D.E. 17, 20 ("Letters from Barbara Stone"); D.E. 24 ("Motion to Cancel Void and Strike Illegal Writ of Execution"); D.E. 25 ("Emergency Supplement to

Motion to Vacate, Void, Cancel and Set Aside Illegal Writ of Execution and Emergency Motion to Turn Matter Over to Federal Law Enforcement"); D.E. 29 ("Objection to Magistrate Judge and Motion for Mandatory Removal of Magistrate Judge Pursuant to USC 636"); D.E. 30 ("Emergency Motion to Provide Court Order Ordering Prison to Arrange Phone Call Regarding the Unnoticed Hearing on July 17, 2018 and Motion for Court to Establish JPAY Account for Movant to Have Equal Protection of and Access to Court"); D.E. 31 ("Emergency Motion to Cancel Hearing on July 17, 2018 for Which Barbara Stone has No Notice"); D.E. 32 ("Motion for Trial by Jury"); D.E. 40 ("Motion for Disqualification of Judge Jennifer G. Zipps"); D.E. 41 ("Supplement to Emergency Motion for Removal of and Disqualification of Magistrate Judge Bernardo P. Velasco"); D.E. 83 ("Second Motion to Disqualify Judge Jennifer Zipps"); D.E. 85 ("Notice, Objection to Non-Response by Roy R. Lustig to Motion for Disqualification and Supplement to Preserve Record"); D.E. 86 ("Second Motion for Disqualification of Magistrate Judge Bernardo Velasco"); D.E. 88 ("Motion to Add Third Parties FBI and Dept. of Justice"); D.E. 89 ("Motion to Stay Proceeding Pending Resolution of this Matter by Florida Court Wherein a Motion to Set Aside, Vacate and Void for Fraud on the Court is Pending"); D.E. 90 ("Motion for Hearing on Motion to Stay Proceeding Pending Resolution of Motion to Void and Set Order by Florida Court for Fraud on the Court"); D.E. 91 ("Motion for Telephone Deposition of Roy R. Lustig"); D.E. 92 ("Motion for Order on Motions for Disqualification of Judge Jennifer Zipps and Magistrate Judge Bernardo Velasco and to Void Their Orders").  None of these motions were granted.

8.      **In re: Barbara Stone**, **Case No. 4:18-bk-13486-SHG (Bankr. D. Ariz. Nov. 2, 2018)**

On November 2, 2018, Stone initiated a voluntary Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Arizona.  In re: Barbara Stone, Case No. 4:18-bk-13486-SHG (Bankr. D. Ariz. Nov. 2, 2018).  In that case, Stone filed eight "emergency" motions.  Id., D.E. 90, 91, 92, 93, 94, 95, 113, 114.  On March 13, 2019, the court granted Lustig's motions to dismiss.  Id., D.E. 121.  It appears that the dismissal rendered Stone's "emergency" motions moot.  See id., D.E. 129.

9.      **Stone v. Lustig**, **Case No. 4:19-ap-00081-SHG (Bankr. D. Ariz. Mar. 4, 2019)**

On March 4, 2019, Stone instituted an adversary proceeding against Lustig in the United States Bankruptcy Court for the District of Arizona.  Stone v. Lustig, Case No. 4:19-ap-00081-SHG (Bankr. D. Ariz. Mar. 4, 2019).  Therein, she accuses Lustig and the Bankruptcy Trustees of extortion and Hobbs Act Robbery.  Id.  The case was dismissed when Stone failed to pay the filing fee.  Id., D.E. 6, 11.

10.     **In re: Barbara Stone**, **Case No. 19-16164-BKC-LMI (Bankr. S.D. Fla. May 9, 2019)**

On May 9, 2019, Mr. Morburger filed an involuntary Chapter 11 bankruptcy proceeding against Stone claiming "business debts" in the United States Bankruptcy Court for the Southern District of Florida.[10]  In re: Barbara Stone, Case No. 19-16164-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. May 9, 2019).  The Court mentions this case solely to highlight the many pro se "emergency" motions Stone filed in that case, most of which continue

---

[10]      The case was later converted to a Chapter 7 bankruptcy.  See id., D.E. 81.

Stone's assault on Roy Lustig's character.  See id., D.E. 15, 16, 17, 35, 36, 37, 38, 157, 158, 159, 160, 161, 162, 163.  All of those motions were denied.  See id., D.E. 21, 22, 42, 43, 44, 45, 62, 177, 178.

### 11.   <u>Stone v. Lustig</u>, **Case No. 19-01165-BKC-LMI (Bankr. S.D. Fla. May 29, 2019)**

On May 29, 2019, Stone filed a rambling <u>pro se</u> "emergency" adversary proceeding against Lustig in the United States Bankruptcy Court for the Southern District of Florida. <u>Stone v. Lustig</u>, Case No. 19-01165-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. May 29, 2019). In that case, Stone claims that her "purported debt" to "Fraudster Lustig" is "fraudulent and must be discharged."  <u>Id.</u> at 1.  On June 17, 2019, Judge Isicoff issued an Order providing Stone one week to cure a deficiency in her pleading, <u>id.</u>, D.E. 7, but Stone failed to do so and the case was dismissed, <u>id.</u>, D.E. 8.

### 12.   <u>Stone v. Unidentified Party</u>, **Case No. 19-01177-BKC-LMI (Bankr. S.D. Fla. June 3, 2019)**

On June 3, 2019, Stone filed a rambling <u>pro se</u> Complaint for Adversary Proceeding[11] against an unidentified "purported trustee in bankruptcy" because, among other reasons, "HE IS VIOLATING HIS MANDATE PURSUANT TO BANKRUPTCY LAWS; HE IS OPENLY HOSTILE AND PREJUDICE [sic] TO STONE; [and] HE IS WOEFULLY LACKING GOOD JUDGMENT . . . ."  <u>Stone v. Unidentified Party</u>, Case No. 19-01177-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. June 3, 2019).  In particular, Stone alleges that the trustee "IS PERPETRATING AND ACCOMPANYING FRAUD BY ROY

---

[11]       The title of the document, "COMPLAINT FOR ADVERSARY PROCEEDING," is preceded by the word "EMERGENCY" which Stone crossed out.  <u>Id.</u>, D.E. 1 at 1.

R. LUSTIG, A FRAUDULENT CREDITOR[.]"  Id.  On June 17, 2019, Judge Isicoff

issued an Order providing Stone one week to cure a deficiency in her pleading, id., D.E. 9,

but Stone failed to do so and the case was dismissed, id., D.E. 8.

> 13.  **Stone v. Lustig, Case No. 19-22485-Civ-Moore (S.D. Fla. June 14, 2019)**

On June 14, 2019, Stone filed a rambling pro se complaint against Lustig—in which

she repeatedly refers to Lustig as "Embezzler Lustig"—seeking to vacate this Court's

Judgment.  Stone v. Lustig, 19-22485-Civ-Moore, D.E. 1 (S.D. Fla. June 14, 2019).  The

complaint accuses the undersigned District Judge and Magistrate Judge Jonathan Goodman

of engaging in "criminal acts" and acting as accessories "to an embezzlement scam

masterminded by Embezzler Lustig . . . ."  Id. at 2.  On January 31, 2020, Chief Judge

Moore dismissed the case for lack of service.  Id., D.E. 10.

> 14.  **Stone v. Isicoff, Case No. 19-22527-Civ-Cooke (S.D. Fla. June 18, 2019)**

On June 18, 2019, Stone filed a rambling pro se, self-styled "Emergency Motion for

Declaratory Relief and Motion for Injunction; Verified Show Cause, RICO, Criminal Acts,

Fraud, Bullying and Denial of Due Process" against United States Bankruptcy Judge Laurel

M. Isicoff.  Stone v. Isicoff, Case No. 19-22527-Civ-Cooke, D.E. 1 (S.D. Fla. June 18,

2019).  Therein, Stone states:

> THE CRUX OF ALL MATTERS INCLUDING THE BANKRUPTCY
> MATTER IS AN ILLEGAL VOID JUDGMENT OBTAINED BY ROY
> LUSTIG THAT IS BEING USED TO EMBEZZLE STONE'S ASSETS
> WITH THE ACCOMPANIMENT OF THE BANKRUPTCY COURT
> WHO IS ACTING IN ABUSE OF POWER BY PERPETRATING A SHAM
> COLOR OF LAW PROCEEDING THAT IS NOT NEEDED AND IS
> UNLAWFULLY PROCEEDING INSTEAD OF REMEDIATING THE

ACTUAL CORE ISSUE BY REQUIRING A CRIMINAL INVESTIGATION OF THE FALSE AND FRAUDULENT CLAIM OR TRANSFERRING THE MATTER TO A COURT WITH JURISDICTION.

Id. at 2.  Stone asserts that everyone involved is acting unlawfully, and appears to request that her bankruptcy case be transferred to the District Court where she can litigate her case against Lustig on the merits.  See id. at 2-22.

On June 19, 2019, Stone filed an "emergency" motion to consolidate.  Id., D.E. 5. That motion was allegedly signed by Arthur J. Morburger, although it has all of the hallmarks of a Barbara Stone-penned motion—in fact, although the signature block includes Mr. Morburger's name, it includes Barbara Stone's email address.  Id. at 6.  Also, it was filed conventionally through the Clerk's office (like all of Stone's pro se filings), rather than electronically via CMECF (like all of Mr. Morburger's filings in this case).  In any event, the "emergency" motion seeks to consolidate Case No. 19-22527-Civ-Cooke with the state court guardianship matter, the bankruptcy case, and the Arizona cases.  Id.

On October 1, 2019, Judge Cooke issued an Order sua sponte dismissing the Complaint for failure to state a claim, and because Judge Isicoff enjoys judicial immunity. Id., D.E. 7.  Judge Cooke further found "the Complaint to be frivolous on its face."  Id. at 2.

**15.   Stone v. Elmore, et al., Case No. 19-CV-8264 (CM) (S.D.N.Y. Sept. 4, 2019);**
**Stone v. Elmore, et al., Case No. 19-23951-Civ-Martinez (S.D. Fla. Sept. 6, 2019)**

On September 4, 2019, Stone filed a rambling fifty-four-page pro se complaint (inclusive of exhibits) against Oppenheimer Holdings, each of its Directors, and an

investment advisor in the United States District Court for the Southern District of New York.  Stone v. Elmore, et al., Case No. 19-CV-8264 (CM), D.E. 1 (S.D.N.Y. Sept. 4, 2019).  The Complaint seeks a "**FULL EN BANC PANEL OF JUDGES**" due to the "**GRAVE AND EXTRAORDINARY HUMAN RIGHTS VIOLATIONS, PUBLIC POLICY CONSIDERATIONS AND UNLAWFUL ACTIONS OF GOVERNMENT OFFICIALS OF ANOTHER STATE[.]**"[12] Id. at 2.  The first heading of the Complaint is: "**NOTICE OF TOXIC ALLIGATOR SWAMP INFESTATION, CORRUPTION AND LAWLESS COURTS IN THE STATE OF FLORIDA WHICH BREED A STATE OF FLORIDA SPONSORED SERIAL MURDER, HUMAN TRAFFICKING AND WAR CRIMES RACKETERING** [sic] **ENTERPRISE AND VICIOUS RETALIATION AND ATTACKS AGAINST PLAINTIFF AND OTHERS WHO EXPOSE THE FLORIDA TOXIC SWAMP**[.]"[13] Id.  The Complaint attacks the legality of Florida's guardianship statute and the legitimacy of Helen Stone's guardianship proceedings.  See id. at 2-8.  It compares Helen Stone's guardianship to a "war crime" and the Holocaust.  Id. at 8 ("NO ONE SHOULD BE SUBJECTED OR HAVE TO LIVE WITH THESE ATROCITIES ON THE ORDER OF THE THIRD REICH REGIME.").

On September 17, 2019, the case was transferred to this District.  Stone v. Elmore, Case No. 19-23951-Civ-Martinez, D.E. 4 (S.D. Fla. Sept. 17, 2019).  After Judge Martinez referred the matter to Magistrate Judge Alicia M. Otazo-Reyes for all pretrial proceedings,

---

[12]     The typeface is capitalized and bold in the complaint.

[13]     The typeface is capitalized and bold in the complaint.

id., D.E. 8, Stone filed an "emergency" response indicating that she is "unable to participate in court matters" because her mother passed away on September 17, 2019, id., D.E. 9 at 1. She also asserted that "Roy R. Lustig is an undicted felon" who she believes "had a hand in Stone's mother's death . . . ." Id. at 1.

On November 5, 2019, Judge Martinez issued an Order administratively closing the case and instructing Stone to either file a status report or serve the defendants prior to December 3, 2019. Id., D.E. 10. To date, Stone has not filed a status report or served the defendants with process in that case.

### 16.     Stone v. Isicoff, Case No. 19-24674-Civ-Williams (S.D. Fla. Nov. 12, 2019)

On November 12, 2019, Stone filed a rambling pro se "Emergency Petition for Writ of Prohibition and Demand for Jury Trial to Prohibit Laurel M. Isicoff, an Illegally Acting Non Article III Judge Who is Disqualified from Acting and to Mandate the Disqualification of the Disqualified Judge" against United States Bankruptcy Judge Laurel M. Isicoff. Stone v. Isicoff, Case No. 19-24674-Civ-Williams, D.E. 1 (S.D. Fla. Nov. 12, 2019). Therein, she "demands" that Chief Judge K. Michael Moore disqualify Judge Isicoff from Stone's bankruptcy proceedings, and "report her crimes and massive human rights violations and those of corrupt magistrate Jonathan Goodman to authorities on Nov. 1, 2019." Id. at 1. She accuses both Judge Isicoff and Judge Goodman of criminal conduct. See id. at 2. She accuses Judge Goodman of being "a fake, morally bankrupt, imposter non judge . . . who should have long ago been removed from the bench"—primarily because he issued the Report in this case recommending that the Court enter a $1.7 million

Judgment against her and in favor of Lustig—and of "running a racket whereby kickbacks, payoffs, grafts and bribes are exchanged."  See id. at 2-3.  Stone accuses Judge Isicoff of "systematically and deliberately" embezzling Stone's assets.  Id. at 3.

On November 14, 2019, Judge Williams dismissed the case pursuant to 28 U.S.C. § 1915(e) for failure to state a claim.  Id., D.E. 7.  Judge Williams noted that Stone "has already filed numerous meritless and often duplicative lawsuits in this district[,]" and advised Stone that "pro se filings do not serve as an 'impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'"  Id. at 2-3 (quoting Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988)).

### 17. Stone v. Nelson Mullins Riley & Scarborough LLP, et al., Case No. 3:20-1290-JMC-SVH (D.S.C. Apr. 3, 2020) Stone v. Nelson Mullins Riley & Scarborough LLP, et al., Case No. 20-22346-Civ-Scola (S.D. Fla. Apr. 3, 2020)

On April 3, 2020, Stone filed a rambling ninety-four-page pro se Complaint against twenty defendants—including Florida Governor Ron Desantis, Florida Attorney General Ashley Moody, a Dade County Judge, and a Broward County Judge—in the United States District Court for the District of South Carolina.  Stone v. Nelson Mullins Riley & Scarborough LLP, et al., Case No. 3:20-1290-JMC-SVH, D.E. 1 (D.S.C. Apr. 3, 2020). Therein, she generally complains of:

**AN ORGANIZED RACKETEERING ENTERPRISE WHERE PROBATE COURT JUDGES, ATTORNEYS AND GUARDIANS ARE RULING COMPETENT SENIOR CITIZENS INCAPACITATED TO STRIP THEM OF THEIR CIVIL AND HUMAN RIGHTS . . . THEN STEALING THEIR ENTIRE ESTATES . . . AND ONCE THEIR ASSETS ARE EMBEZZLED AND STOLEN, THESE VULNERABLE**

**ADULTS ARE PUT ON HIGH DOSES OF TOXIC PSYCHOTROPIC MEDICATION TO CAUSE THEIR SUDDEN CARDIAC DEATH[.] THIS IS A PANDEMIC CRISES, A NATIONAL DISASTER THAT SURPASSES CORONA[.]**

Id. at 4.[14]   She labels Florida's guardianship framework a "**MURDER-FOR-HIRE RACKET**," id. at 26, and a "**NAZI-DERIVED ENTERPRISE**," (id. at 28), among many other things.[15]

On April 17, 2020, Magistrate Judge Shiva V. Hodges issued a Report and Recommendation finding that venue was not proper in the District of South Carolina and recommending that the case be transferred to this District. Id., D.E. 8.  On April 29, 2020, Stone filed a document titled: "**NOTICE OF OBJECTION TO ILLEGAL VOID 'REPORT AND RECOMMENDATION' BY COLOR OF LAW MAGISTRATE SHIVA HODGES THAT MUST BE SET ASIDE BY A LEGITMATE ARTICLE III JUDGE.**" Id., D.E. 10.  The same day, Stone filed an Amended Complaint adding Judge Hodges as a Defendant.  Id. D.E. 11.  On May 11, 2020, Stone filed an

**EMERGENCY MOTION TO DISQUALIFY ALL JUDGES IN THE UNITED STATES DISTRICT COURT OF SOUTH CAROLINA AND TRANSFER THE MATTER TO ANOTHER UNITED STATES DISTRICT COURT WHEREIN THERE ARE NO JUDGES WITH CONNECTIONS TO ANY OF THE DEFENDANTS; THERE ARE NO JUDGES WHO ARE MEMBERS OF THE FLORIDA BAR; AND WHICH DISTRICT JUDGES DO NOT FALL WITHIN THE APPELLATE JURSIDCTION OF THE 4TH CIRCUIT[,] AND EMERGENCY MOTION FOR THIS EMERGENCY DISQUALIFICATION MOTION TO BE HEARD AND DECIDED BY A FULL PANEL OF DISTRICT COURT JUDGES IN ANOTHER JURISDICTION NONE OF WHOM HAVE CONNECTIONS AND/OR**

---

[14]   The typeface is capitalized and bold in the complaint.

[15]   The typeface is capitalized and bold in the complaint.

**RELATIONSHIPS WITH ANY OF THE DEFENDANTS AND NONE OF WHOM ARE MEMBERS OF THE FLORIDA BAR DUE TO THE INHERENT CONFLICT OF INTEREST[.]**

Id., D.E. 14.[16]  On June 2, 2020, Stone re-filed the same (or virtually the same) motion for disqualification, to which she attached a "**WRIT OF ATTACHMENT ON THE OATH OF OFFICE AND BOND OF JUDGE MICHELLE CHILDS AND DEMAND FOR IMPEACHMENT OF JUDGE MICHELLE CHILDS**."[17]

On June 5, 2020, the case was transferred to the Southern District of Florida and assigned to Judge Scola.  Stone v. Nelson Mullins Riley & Scarborough LLP, et al., Case No. 20-22346-Civ-Scola (S.D. Fla. Apr. 3, 2020).  The case is currently pending before Judge Scola.

**Summary of history of litigation entailing vexatious, harassing and duplicative lawsuits**

Based on the foregoing, the Court finds that Barbara Stone has engaged in vexatious, harassing, duplicative litigation.  Specifically, Stone has filed at least fourteen separate lawsuits that all, in some way, directly challenge the state court guardianship proceedings and disparage all of those involved.  See Stone v. Genden, et al., 14-cv-03404-LAP, D.E. 1, 2 (S.D.N.Y. May 6, 2014); Stone v. Hertz, et al., 14-cv-03478-LAP, D.E. 2 (S.D.N.Y. May 12, 2014); Stone v. Hertz, et al., 14-21776-Civ-Williams, D.E. 10, 16, 32, 38, 47, 52 (S.D. Fla. May 14, 2014); Stone v. Scott, et al., Case No. 14-23318-Civ-Scola, D.E. 1, 14, (S.D. Fla. Sept. 8, 2014); Stone v. Brennan, et al., Case No. 15-20810-Civ-Altonaga, D.E.

---

[16]      The typeface is capitalized and bold in the filing.

[17]      The typeface is capitalized and bold in the filing.

1 (S.D. Fla. Feb. 27, 2015); <u>Stone v. Genden, et al.</u>, Case No. 15-61004-Civ-Zloch, D.E.

1, 10, 18 (S.D. Fla. May 14, 2015); <u>In re: Barbara Stone</u>, Case No. 4:18-bk-13486-SHG,

D.E. 90, 91, 92, 93, 94, 95, 113, 114 (Bankr. D. Ariz. Nov. 2, 2018); <u>Stone v. Lustig</u>, Case

No. 4:19-ap-00081-SHG, D.E. 1 (Bankr. D. Ariz. Mar. 4, 2019); <u>Stone v. Lustig</u>, Case No.

19-01165-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. May 29, 2019); <u>Stone v. Unidentified Party</u>,

Case No. 19-01177-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. June 3, 2019); <u>Stone v. Lustig</u>,

19-22485-Civ-Moore, D.E. 1 (S.D. Fla. June 14, 2019); <u>Stone v. Isicoff</u>, Case No. 19-

22527-Civ-Cooke, D.E. 1 (S.D. Fla. June 18, 2019); <u>Stone v. Elmore, et al.</u>, Case No. 19-

CV-8264 (CM), D.E. 1 (S.D.N.Y. Sept. 4, 2019);  <u>Stone v. Elmore</u>, Case No. 19-23951-

Civ-Martinez, D.E. 1, 9 (S.D. Fla. Sept. 17, 2019); <u>Stone v. Isicoff</u>, Case No. 19-24674-

Civ-Williams, D.E. 1 (S.D. Fla. Nov. 12, 2019); <u>Stone v. Nelson Mullins Riley &</u>

<u>Scarborough LLP, et al.</u>, Case No. 3:20-1290-JMC-SVH (D.S.C. Apr. 3, 2020); <u>Stone v.</u>

<u>Nelson Mullins Riley & Scarborough LLP, et al.</u>, Case No. 20-22346-Civ-Scola (S.D. Fla.

June 8, 2020).  Stone was a party to at least four other cases in which she continued her

assault on the guardianship proceedings and its participants.  <u>Lustig v. Stone</u>, 15-20150-

Civ-Lenard, D.E. 25, 32, 170, 171, 180, 197, 203, 204, 205, 208, 217, 218, 223, 224, 225

(S.D. Fla. Jan. 15, 2015); <u>Lustig v. Stone</u>, Case Nos. 4:18-cv-00469-JGZ, D.E. 17, 20, 25,

29, 31, 32, 40, 83, 86, 120, 121, 171, 172, 181, 186, 193 (D. Ariz. Mar. 20, 2018); <u>Lustig</u>

<u>v. Stone</u>, 4:18-mc-00004-JGZ-BPV, D.E. 17, 20, 25, 29, 30, 31, 32, 40, 41, 83, 85, 86, 88,

89, 90, 91, 92 (D. Ariz. Mar. 20, 2018); <u>In re: Barbara Stone</u>, Case No. 19-16164-BKC-

LMI, D.E. 15, 16, 17, 35, 36, 37, 38, 157, 158, 159, 160, 161, 162, 163 (Bankr. S.D. Fla.

May 9, 2019).  Essentially every <u>pro se</u> filing in each of the cases listed above contains

repetitive, vexatious, and harassing personal and/or professional attacks on Lustig, Hertz, Lapides, Judge Genden, and many other individuals.  Additionally, Stone has mounted scandalous attacks on the integrity of several federal judges and has made a mockery of the federal judicial system.  Therefore, this factor weighs heavily in favor of deeming Stone a vexatious litigant and enjoining future filings.

  **b.     Stone's Motive in Pursuing the Litigation**

  Under the second factor, the Court looks to Stone's motive in pursuing the litigation and her expectation of prevailing.  Ray, 2003 WL 22384806, at *2 (citing Safir, 792 F.2d at 24).

  As to Stone's motive, on August 18, 2015, Judge Goodman found in his Report and Recommendations on Plaintiff's Damages that "Stone has shown through her conduct a single-minded intent to destroy Lustig professionally and personally."  (D.E. 58 at 17, Report and Recommendation adopted, D.E. 64.)  A thorough review of Stone's subsequent judicial filings demonstrates that her motive in pursuing these cases continues to be to destroy Lustig professionally and personally, to avoid satisfying the Judgment Lustig obtained against her, and to undermine the legitimacy of the guardianship proceedings.

  At this point, Stone cannot possibly "have an objective good faith expectation of prevailing[.]" Ray, 2003 WL 22384806, at *2 (citing Safir, 792 F.2d at 24).  As previously discussed, the Eleventh Circuit Court of Appeals has affirmed the Court's entry of Judgment against Stone, (D.E. 109), and subsequently affirmed the Court's Order denying Stone's Motion to Vacate Judgment, (D.E. 148).  In every other case, Stone either abandoned her claims or the Court dismissed them.  Judge Scola found her claims to be

"fantastical and delusional." <u>Stone v. Scott, et al.</u>, Case No. 14-23318-Civ-Scola, D.E. 15 (S.D. Fla. Sept. 17, 2014).   Judge Cooke found her complaint against Judge Isicoff to be "frivolous on its face." <u>Stone v. Isicoff</u>, Case No. 19-22527-Civ-Cooke, D.E. 7 (S.D. Fla. Oct. 1, 2019).   Based on the Court's review, it appears that no judge in any of the cases discussed above found any merit in any complaint, petition, or motion Stone has filed, other than a motion for extension of time.   Thus, Stone cannot possibly "have an objective good faith expectation of prevailing[.]" <u>Ray</u>, 2003 WL 22384806, at *2 (citing <u>Safir</u>, 792 F.2d at 24).   This factor weighs heavily in favor of deeming Stone a vexatious litigant and enjoining future filings.

### c.   Whether the Litigant is Represented by Counsel

The third factor the Court considers is whether Stone is represented by counsel. <u>Ray</u>, 2003 WL 22384806, at *2 (citing <u>Safir</u>, 792 F.2d at 24).   Stone proceeded without counsel from the inception of this lawsuit through the Court's entry of Judgment against her (although Stone, herself, is a former attorney who has been disbarred in Florida).   <u>See</u> D.E. 64 at 2 n.1 (citing The Florida Bar Association, www.floridabar.org, Find a Lawyer, Barbara Stone Kipnis (last visited Dec. 1, 2015)).   During that time, Stone exhibited a staunch refusal to comply with the Court's Orders and Rules.   (<u>See, e.g.</u>, D.E. 20, 24, 31, 34, 35, 49, 64.)

On January 6, 2016, attorney Jesmany Jomarron filed a Notice of Appeal of the Court's Judgment on Stone's behalf, and later filed a Motion to Dissolve Writ of Garnishment.   (D.E. 72, 82.)   On August 14, 2017, the Court granted Ms. Jomarron's Motion to Withdraw as Stone's attorney.   (D.E. 130.)

Thereafter, Stone once again proceeded <u>pro se</u> and filed several frivolous motions, including four "emergency" motions that were not properly certified as "true" emergencies pursuant to Local Rule 7.1(d), (D.E. 144, 145, 146, 147), a Motion to Vacate Judgement, (D.E. 148), and a Motion to Vacate Judgment and Set Aside Judgment for Fraud on the Court, (D.E. 151). She also filed a "Supplement" to her <u>pro se</u> motions which included ten handwritten pages attacking Lustig. (D.E. 154.)

On May 18, 2018, Attorney Arthur J. Morburger filed a Notice of Appeal on Stone's behalf, thereby entering an appearance as Stone's attorney. <u>See</u> S.D. Fla. L.R. 11.1(d). Despite having counsel, Stone has continued to file frivolous <u>pro se</u> motions, (D.E. 170, 171, 197, 203, 204, 205, 208, 217, 218, 223, 224, 225), requiring the Court to repeatedly expend judicial resources to strike those motions pursuant to Local Rule 11.1(d)(4), and repeatedly warn her that her "emergency" motions fail to comply with Local Rule 7.1(d) and other local rules, (D.E. 172, 198, 200, 206, 210, 222, 227). Her refusal to comply with the Court's rules and orders and to heed the Court's warnings—whether or not she is represented by counsel—weighs in favor of deeming her a vexatious litigant.

### d.   Whether Stone has Caused Needless Expense to Other Parties and Unnecessarily Burdened the Court

"One of the most important factors that the Court must consider in determining whether to issue a <u>Martin–Trigona</u> order is whether the litigant's actions have caused needless expense to other parties or has posed an unnecessary burden on the Court and its personnel." <u>Ray</u>, 2003 WL 22384806, at *3. In this case alone, Lustig was required to respond to numerous frivolous motions, (<u>see, e.g.</u>, D.E. 14, 23, 48, 63, 156, 177), move for

44

sanctions due to Stone's failure to comply with the Court's Judgment, (D.E. 111), and advise the Court that Stone has published <u>additional</u> defamatory statements in the public records of Pima County, Arizona, (D.E. 168, 168-1, 168-2, 168-3).  Lustig has also been required to defend against frivolous lawsuits filed by Stone before Judge Williams, Case No. 14-21776-Civ-Williams (S.D. Fla. May 12, 2014) and Judge Zloch, Case No. 15-61004-Civ-Zloch (S.D. Fla. May 14, 2015).[18]  Lustig was also required to litigate—and successfully moved to dismiss—the voluntary Chapter 11 Bankruptcy proceeding Stone filed in the District of Arizona, <u>In re: Barbara Stone</u>, Case No. 4:18-bk-13486-SHG, D.E. 121 (D. Ariz. Mar. 14, 2019).[19]  Thus, the Court finds that Stone has caused needless expense to Mr. Lustig.

Likewise, the unnecessary burden that Stone's actions have had on the Court cannot be overstated.  Briefly, due to Stone's actions (and inaction), the Court was required to, inter alia, issue four orders to show cause (D.E. 20, 24, 31, 138), eight orders striking numerous motions that did not comply with the Court's rules, (D.E. 49, 166, 172, 198, 206, 210, 222, 227), and several orders denying patently meritless and/or frivolous motions, (<u>see, e.g.</u>, D.E. 29 (Order Denying Emergency Application for Ex Parte Temporary Restraining Order and Preliminary Injunction in which Stone requested that the Court

---

[18]    Stone had an additional lawsuit pending against Lustig before Judge Moore, but that case was dismissed for lack of service.  <u>Stone v. Lustig</u>, Case No. 19-22485-Civ-Moore (S.D. Fla. June 14, 2019).

[19]    Stone also filed two adversary proceedings against Lustig in United States Bankruptcy Court, but both were dismissed early.  <u>Stone v. Lustig</u>, Case No. 4:19-ap-00081-SHG (Bankr. D. Ariz. Mar. 4, 2019); <u>Stone v. Lustig</u>, Case No. 19-01165-BKC-LMI, D.E. 1 (Bankr. S.D. Fla. May 29, 2019).

enjoin Judge Genden from holding a show cause hearing in state court); D.E. 49 (Order Denying Motion for Sanctions in which Stone, who was proceeding pro se, requested "attorneys' fees and expenses incurred in filing [her] Motions to Dismiss and this Motion for Sanctions").  The Court notes that this case has been closed since December 7, 2015 when the Court entered Final Judgment in favor of Lustig and against Stone.  (D.E. 64.) However, Stone continued (and still continues) to ferociously litigate this case, (see D.E. 144, 145, 146, 147, 148, 151, 170, 171, 174, 180, 197, 203, 204, 205, 208, 217, 218, 223, 224, 225), despite the fact that the Eleventh Circuit Court of Appeals has affirmed the Court's entry of Judgment against Stone, (Mandate, D.E. 109), and subsequently affirmed the Court's Order denying Stone's Motion to Vacate Judgment, Lustig v. Stone, Case No. 18-12106 (11th Cir. Aug. 7, 2019).

Stone's actions have also unnecessarily burdened several other divisions of this Court.   Stone v. Hertz, et al., 14-21776-Civ-Williams, D.E. 10, 16, 32, 38, 47, 52 (S.D. Fla. May 14, 2014); Stone v. Scott, et al., Case No. 14-23318-Civ-Scola, D.E. 1, 14,  (S.D. Fla. Sept. 8, 2014); Stone v. Brennan, et al., Case No. 15-20810-Civ-Altonaga, D.E. 1 (S.D. Fla. Feb. 27, 2015); Stone v. Genden, et al., Case No. 15-61004-Civ-Zloch, D.E. 1, 10, 18 (S.D. Fla. May 14, 2015); Stone v. Lustig, 19-22485-Civ-Moore, D.E. 1 (S.D. Fla. June 14, 2019); Stone v. Isicoff, Case No. 19-22527-Civ-Cooke, D.E. 1 (S.D. Fla. June 18, 2019); Stone v. Elmore, Case No. 19-23951-Civ-Martinez, D.E. 1, 9 (S.D. Fla. Sept. 17, 2019); Stone v. Isicoff, Case No. 19-24674-Civ-Williams, D.E. 1 (S.D. Fla. Nov. 12, 2019). Thus, the Court finds that Stone has unnecessarily burdened the Court.  Therefore, this factor weighs heavily in favor of deeming Stone a vexatious litigant.

### e.   Whether Other Sanctions Would be Adequate to Protect Other Parties and the Court

Finally, the Court must determine whether other sanctions would be adequate to protect Plaintiff and the Court.

As an initial matter, given the pending bankruptcy proceedings, the Court finds that imposing monetary sanctions would be improper.  See In re Barbara Stone, Case No. 19-16164-BKC-LMI (Bankr. S.D. Fla. May 9, 2019).

Moreover, history shows us that other sanctions—e.g., a contempt order, incarceration—are inadequate to curb Stone's litigation.  Four years ago the Court issued an Omnibus Order entering Judgment against Stone which, among other things, ordered Stone to remove certain defamatory statements from the internet and permanently enjoined her from further publishing those statements.  (D.E. 64 at 15.)  Stone completely disregarded the Court's Judgment, refused to remove the defamatory statements from the internet, and even republished defamatory statements about Lustig.  (See D.E. 111, 111-1, 111-2, 111-3, 111-4, 111-5, 111-6, 111-7, 111-8, 111-9.)

Thereafter, Stone published additional defamatory statements about Lustig.  (See D.E. 168, 168-1, 168-2, 168-3.)  Specifically, on July 5, 2018, she executed an Affidavit in the public record of Pima County, Arizona titled: "Affidavit and Notice of Illegal, Wrongful and Void Conveyance of Title and Void and Illegal Title to Property and Declaration of Truth."  (D.E. 168-1.)  The Affidavit asserts, inter alia, that (1) Stone "has been subjected to a vicious, fraudulent, illegal SLAPP lawsuit to extort her assets and silence her by a void, unlawful order entered without jurisdiction . . . filed by Roy R. Lustig

47

against Affiant," (id. at 3); (2) the "SLAPP lawsuit was the product of perjured, fraudulent accusations against Affiant by Roy R. Lustig . . . ," (id. at 4); and (3) suggests that Lustig "intentionally placed [Helen Stone] on the brink of death repeatedly . . . ," (id.).  That Affidavit was recorded in the Pima County Recorder three times on July 20, 2018.  (Id. at 9; D.E. 168-2 at 9; D.E. 168-3 at 9.)

Moreover, the record reflects that Stone has been incarcerated at least twice due to her actions in the state court guardianship proceedings.  First, on September 2, 2015, Stone advised the Court that she had been arrested and "incarcerated for approximately three weeks—in connection with her mother's probate case . . . ."  (D.E. 61 at 2.)  Second, on February 26, 2018, Stone filed a Motion for extension of time to reply to the Order to show cause why she should not be held in contempt, and to attend the show cause hearing, stating that she was "confined to jail again as a result of issues arising from the guardianship of her mother, Helen Stone[.]"  (D.E. 141 at 1.)  The Court further notes that in one of her Motions to Vacate Judgment, Stone states that "for the past FIVE YEARS, Barbara has been repeatedly detained on a false charge of 'interfering' with the 'custody' of her own mother . . . ."  (D.E. 151 at 9 (emphasis added).)  Thus, it appears that Stone may have been incarcerated more than twice in relation to her mother's guardianship proceedings.

Regardless, despite having been "repeatedly" incarcerated for her actions in relation to the issues giving rise to this lawsuit, and despite the prospect of being held in contempt for her failure to comply with this Court's Orders, (see D.E. 138, 143), Stone has refused to comply with the Court's Omnibus Order, republished the defamatory material, published additional defamatory statements about Lustig, and continued to vexatiously litigate this

48

case full throttle—a case that has been closed for more than <u>four years</u>.  Finally, the Court notes that although the Court has repeatedly stricken her <u>pro se</u> motions pursuant to Local Rule 11.1(d)(4) because she is represented by counsel, (D.E. 167, 172, 198, 206), she continues to file <u>pro se</u> motions, (D.E. 170, 171, 198, 203, 204, 205).  As such, the Court finds that other sanctions would be inadequate to protect the Parties and the Court.

## III.    Injunction

The court is not powerless to curbing Stone's abuses.  "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."  <u>Procup v. Strickland</u>, 792 F.2d 1069, 1074 (11th Cir. 1986) (citing <u>In re Martin-Trigona</u>, 737 F.2d at 1261-62).  "The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others."  <u>Id.</u>  "In allowing courts to protect their 'respective jurisdictions,' the [All Writs] Act allows them to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments."  <u>Klay</u>, 376 F.3d at 1099 (citing <u>Wesch v. Folsom</u>, 6 F.3d 1465, 1470 (11th Cir. 1993) ("In addition, courts hold that despite its express language referring to 'aid . . . of jurisdiction,' the All–Writs Act empowers federal courts to issue injunctions to protect or effectuate their judgments.") (footnotes omitted).  This includes the power to enjoin litigants who abuse the legal system by harassing their opponents.  <u>Harrelson v. United States</u>, 613 F.2d 114, 116 (5th Cir. 1980) (affirming district court's dismissal of complaint and injunction against

"any future litigation on any cause of action arising from the fact situation at issue in this case").[20]

"The right of access to the courts 'is neither absolute nor unconditional.'" Miller v. Donald, 541 F.3d 1091, 1096 (11th Cir. 2008) (quoting Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 516 (11th Cir. 1991) (quoting In re Green, 669 F.2d 779, 785 (D.C. Cir. 1981))). "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation." Riccard, 307 F.3d at 1298 (citing Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987) (requiring vexatious litigants to obtain leave of court before filing any further complaints does not violate the First Amendment). "Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons. Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants." Miller, 541 F.3d at 1096. The question for the Court is what conditions and restrictions are necessary in this case to preserve judicial resources and prevent needless harassment for Mr. Lustig.

The Court has broad discretion in fashioning an injunction so long as it does not "completely foreclose a litigant from any access to the courts." Riccard, 307 F.3d at 1298 (citing Martin-Trigona, 986 F.2d at 1387); but see Maid of the Mist Corp. v. Alcatraz Media, LLC, 388 F. App'x 940, 941 (11th Cir. 2010) (affirming a district court's injunction

---

[20]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

restricting the party from "filing <u>any</u> further motion, pleading, or other paper in relation to the instant civil action, and any new lawsuit in any court involving claims arising from the same factual predicate or nucleus of operative facts as in the instant case.") (emphasis added). "Courts can be creative in fashioning appropriate injunctions against abusive litigation tactics." <u>Barash v. Kates</u>, 686 F. Supp. 2d 1323, 1325 (S.D. Fla. 2008) (citations omitted). The Eleventh Circuit routinely upholds injunctions restricting a vexatious litigant from filing anything without prior approval from the Court. <u>See</u> <u>Martin-Trigona</u>, 986 F.2d at 1387 ("This Court has upheld pre-filing screening restrictions on litigious plaintiffs.") (citing <u>Copeland v. Green</u>, 949 F.2d 390 (11th Cir. 1991); <u>Cofield</u>, 986 F.2d at 517-18; <u>see also</u> <u>Riccard</u>, 307 F.3d at 1299. The Court agrees that prior approval is the prudent way to proceed, as outlined below.

## IV.     Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.     Defendant Barbara Stone is hereby deemed to be a vexatious litigant and is **ENJOINED** from making <u>any</u> filing in this Action without first obtaining leave of the Court;

2.     To obtain leave to make a filing, Stone shall submit to Magistrate Judge Jonathan Goodman a short summary of the proposed filing that:

    **a.**     Shall be double-spaced and printed in 12-point or larger type in an easily-readable font;

    **b.**     Shall not exceed two pages in length;

    **c.**     Shall be styled as "Motion for Leave to File";

d.    Shall briefly (a) state that she seeks the Court's approval to make a particular filing, (b) explain the legal purpose or basis of the pleading, and, (c) describe the nature of the pleading with specificity;[21] and

e.    Shall be delivered by the United States Postal Service via certified mail to Magistrate Judge Jonathan Goodman at:

**James Lawrence King Federal Justice Building**
**99 Northeast Fourth Street**
**Room 1168**
**Miami, Florida 33132**

3.    Judge Goodman will review such submissions in chambers and, if appropriate, enter an order denying the request, granting it, or scheduling the matter for hearing, depending on the circumstances and the Court's conclusions;[22]

4.    Grounds for denying Stone leave to make a proposed filing include, but are not limited to, filings that are deemed to be repetitive, duplicative, vexatious, incoherent, harassing, scandalous, and/or pertaining to issues already decided by the Court;

5.    In his discretion, Judge Goodman may (a) Order Stone to mail a copy of the proposed filing to his chambers for further review, (b) Order Plaintiff to show cause as to why Stone should not be permitted to make a proposed filing, and/or (c) grant in part and deny in part leave to make a proposed filing;

---

[21]    See Barash v. Kates, 586 F. Supp. 2d 1323, 1331 (S.D. Fla. 2008).

[22]    See In re Dicks, 306 B.R. 700, 708 (Bankr. M.D. Fla. 2004).

6.  This injunction extends to Barbara Stone's agents, attorneys, aliases, and anyone acting in concert with Stone or on her behalf;[23]

7.  This injunction extends to the filing of any <u>new</u> action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, charge or any similar instrument against Lustig, his family, his clients, his attorneys, or anyone else associated with him in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees without first obtaining leave of this Court;[24]

8.  This injunction shall not apply to filings in Stone's current appeal before the Eleventh Circuit Court of Appeals, <u>see</u> <u>Lustig v. Stone</u>, Case No. 19-12112 (11th Cir. filed May 31, 2019);

9.  Stone shall have **THIRTY DAYS** from the date of this Order within which to file a copy of this Order on the docket in the following cases: <u>Lustig v. Stone</u>, Case No. 4:18-cv-00469-JGZ (D. Ariz. filed Mar. 20, 2018); <u>Lustig v. Stone</u>, 4:18-mc-00004-JGZ-BPV (D. Ariz. filed Mar. 20, 2018); <u>In re: Barbara Stone</u>, Case No. 19-16164-BKC-LMI (Bankr. S.D. Fla. filed May 9, 2019); <u>Stone v. Elmore</u>, Case No. 19-23951-Civ-Martinez (S.D. Fla. filed

---

[23]   <u>See</u> <u>Barash</u>, 586 F. Supp. 2d at 1331.

[24]   <u>See</u> <u>Riccard</u>, 307 F.3d at 1298.

Sept. 4, 2019); and <u>Stone v. Nelson Mullins Riley & Scarborough LLP, et al.,</u> Case No. 3:20-1290-JMC-SVH (D.S.C. Apr. 3, 2020), so that those Courts may decide whether they wish to enforce the injunction.[25]  The Order shall be attached as an Exhibit to a Notice of Filing.  The Notice of Filing shall contain <u>only</u> the following information: (1) the name of the Court in which it is being filed; (2) the case number and caption of the case in which it is being filed; (3) the title "Notice of Filing Order Enjoining Plaintiff/Defendant/Debtor Barbara Stone from Making any Further Filings Without First Obtaining Judicial Permission"; (4) the sentence: "Plaintiff/Defendant/Debtor Barbara Stone has been ordered to file on the docket in this case the attached 'Order Enjoining Defendant Barbara Stone from Making any Further Filings Without First Obtaining Judicial Permission.'"; (5) a signature block; (6) a certificate of service; and (7) any other information required by the rules of the court in which the Notice is being filed.  The Notice <u>shall not</u> contain any other statement of any kind, including arguments, assertions, editorials, opinions, musings, requests, or demands;

---

[25]     <u>See</u> <u>Martin-Trigona</u>, 986 F.2d at 1388 (affirming Judge Zloch's dismissal of complaint for failing to comply with pre-filing injunction issued by a federal district court in Connecticut).

**10.** If Stone wishes to make any filing in any other case listed in Section II(a), supra,[26] she must first file a copy of this Order on the docket in that other case pursuant to the Notice of Filing procedure outlined in the preceding paragraph;

**11.** Any violations of this Order may result in further sanctions.

**DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of June, 2020.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

---

[26] Specifically, Stone v. Genden, et al., 14-cv-03404-LAP (S.D.N.Y. May 6, 2014); Stone v. Hertz, et al., 14-cv-03478-LAP (S.D.N.Y. May 12, 2014); Stone v. Hertz, et al., 14-21776-Civ-Williams (S.D. Fla. May 14, 2014); Stone v. Scott, et al., Case No. 14-23318-Civ-Scola (S.D. Fla. Sept. 8, 2014); Stone v. Brennan, et al., Case No. 15-20810-Civ-Altonaga (S.D. Fla. Feb. 27, 2015); Stone v. Genden, et al., Case No. 15-61004-Civ-Zloch (S.D. Fla. May 14, 2015); In re: Barbara Stone, Case No. 4:18-bk-13486-SHG (Bankr. D. Ariz. Nov. 2, 2018), Stone v. Lustig, Case No. 4:19-ap-00081-SHG (Bankr. D. Ariz. Mar. 4, 2019); Stone v. Lustig, Case No. 19-01165-BKC-LMI (Bankr. S.D. Fla. May 29, 2019); Stone v. Unidentified Party, Case No. 19-01177-BKC-LMI (Bankr. S.D. Fla. June 3, 2019); Stone v. Lustig, 19-22485-Civ-Moore (S.D. Fla. filed June 14, 2019); Stone v. Isicoff, Case No. 19-22527-Civ-Cooke (S.D. Fla. June 18, 2019); Stone v. Elmore, et al., Case No. 19-CV-8264 (CM) (S.D.N.Y. Sept. 4, 2019); Stone v. Isicoff, Case No. 19-24674-Civ-Williams (S.D. Fla. Nov. 12, 2019).